# IN THE COURT OF APPEALS OF TENNESSEE
## AT MEMPHIS[1]
April 18, 2012 Session

## RODNEY W. SCHUTT
### v.
## JODIE ANN MILLER (SCHUTT)

**Appeal from the Circuit Court of Shelby County**
**No. CT-005175-07    D.J. Alissandratos, Special Judge**

---

**No. W2010-02313-COA-R3-CV - Filed September 27, 2012**

---

This appeal concerns post-divorce motions to set aside a marital dissolution agreement.  The parties were divorced based on a mediated marital dissolution agreement. Shortly after the final decree was entered, the appellant wife filed post-divorce motions to set aside the marital dissolution agreement.  The original trial judge first recused herself as to certain issues in the proceedings, and then later recused herself as to the entire case, so the post-divorce matters were ultimately heard by a special judge.  All told, the appellant wife filed over 83 post-divorce pleadings, most involving efforts to set aside the parties' marital dissolution agreement. Eventually, the trial court denied the wife's motions to set aside and awarded the appellee husband over $61,000 in fees as sanctions pursuant to Rule 11 of the Tennessee Rules of Civil Procedure.  The wife now appeals.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Craig V. Morton, Memphis, Tennessee, for the Defendant/Appellant Jodie Ann Miller (Schutt)

Daniel Loyd Taylor and John N. Bean, Memphis, Tennessee, for the Plaintiff/Appellee Rodney W. Schutt

---

[1]Oral argument in this case was held at the University of Memphis School of Law.

# OPINION

## FACTS AND PROCEEDINGS BELOW

Plaintiff/Appellee Rodney W. Schutt ("Husband") and Defendant/Appellant Jodie Ann Miller (Schutt) ("Wife") were married in 1990. They had one daughter, born in 1993.[2] Husband filed for divorce in October 2007.

The parties attempted to mediate their divorce. After a couple of false starts,[3] the parties participated in a mediation on October 8, 2008. In the mediation, Wife was represented by attorney Hal Gerber. At the time of the mediation, Husband was not employed, had no offers of employment, and was interviewing for positions in various parts of the country. This mediation resulted in a Mediation Agreement, executed by both parties on the day of the mediation in the presence of both parties' counsel.

The Mediation Agreement signed by the parties listed their investment accounts and provided that their IRA accounts would be divided evenly between them. Under the Agreement, Husband was to pay Wife $3,600 per month in alimony for five years; upon sale of the marital residence, the alimony was to increase to $4,000 per month. The Agreement stated that, in exchange for Wife's interest in the marital residence, Husband agreed to pay her the sum of $55,000, payable in three cash installment payments in designated months in 2009. After the mediation, the parties' attorneys apparently set about drafting a marital dissolution agreement that would incorporate the terms of the Mediation Agreement.

Approximately a month after the parties executed the Mediation Agreement, Husband was offered a job as the chief executive officer for a California-based corporation, Aspyra, Inc. He accepted the job offer and signed an employment contact on November 12, 2008. Husband's employment contract provided that he would receive a base salary of $225,000 per year plus stock options as approved by the company's board of directors at the next annual shareholders' meeting. Husband began working for Aspyra, Inc. on November 17, 2008. He did not immediately tell Wife that he had secured employment.

---

[2]This appeal does not involve any issues related to the parties' parenting arrangement.

[3]The record indicates that the parties reached a tentative agreement on two occasions prior to signing the Mediation Agreement that is at issue in this appeal. Husband claimed that Wife backed out of these two prior agreements, so for the October 8, 2008 mediation, the parties agreed as a precondition to the mediation that any mediated agreement had to be executed by the parties prior to leaving the mediation.

In the meantime, on November 14, 2008, Wife signed the first version of the parties' marital dissolution agreement; its terms were identical to those in the Mediation Agreement. Five days later, on November 19, 2008, Wife signed a second marital dissolution agreement ("MDA"). The reason why there was a second MDA is not entirely clear; there may have been slight changes from the prior agreement.[4] However, in all ways pertinent to this appeal, this MDA was identical to the prior marital dissolution agreement, and it incorporated the essential terms of the parties' Mediation Agreement. The MDA was filed with the trial court and incorporated into the final divorce decree. The final decree was entered the next day, on November 20, 2008, in the Shelby County Circuit Court, Division V, Judge Kay Robilio presiding.

Approximately two weeks later, Wife filed a motion to alter and amend the final decree of divorce.[5] Wife's motion noted that even though Husband's new job started two days before the final MDA was signed, he had failed to disclose to her the terms of his new employment. Wife argued that Husband's new annual base salary of $225,000 per year would affect his alimony payment under the MDA and also claimed that she was entitled to half of the stock options referenced in Husband's new employment agreement.

A short while later, on December 15, 2008, the proceeds in the investment accounts referenced in the MDA and listed in the Mediation Agreement were disbursed to the parties, pursuant to the terms of the MDA. There were significant changes in the market between the date of the mediation and the date of disbursement. By the date of disbursement, the value of the investment accounts had dropped significantly.

Not long after that, Husband's new job with Aspyra, Inc. evaporated; the company became unable to meet its payroll obligations. Husband received his salary from Aspyra, Inc. for only two months. Husband never received the stock options referenced in his employment agreement.

In April 2009, Wife substituted counsel, and she eventually retained the attorney who now represents her in this appeal. Shortly thereafter, Husband's financial obligations to Wife under the MDA became due, specifically the alimony payments and the payments for Wife's interest in the marital residence. Apparently, anticipating that Wife would file a motion to

_____

[4]It appears that the MDA was slightly modified to require that Husband pay $65,000 in three installments, as opposed to $55,000, in exchange for Wife's interest in the marital residence.

[5]This motion to alter and amend was filed on December 4, 2008. On December 9, 2008, it was amended to include a petition for contempt, alleging that Husband refused to make certain payments under the MDA. Wife later withdrew this petition for contempt.

set aside the MDA, Husband on his own initiative began depositing his monthly alimony obligation with the trial court clerk.[6]

In May 2009, Wife filed a motion seeking immediate release of the funds Husband had deposited with the trial court clerk, as well as an order directing Husband to cease depositing the payments for Wife with the clerk's office. The trial court held a hearing on Wife's motion later the same month. At the hearing, Husband asserted that Wife was seeking at once to rescind the MDA and still retain the benefits of it, and he argued that she should be required to choose whether to affirm it or disaffirm it. The trial court apparently agreed with Husband and took a somewhat unorthodox approach to the issue:

> THE COURT: . . . [I]f you think it is fraud, you don't start asking for the money. You just say, this is fraudulent and I want to challenge it.
> MR. MORTON: There is also a course of conduct. Now, what I have told Mr. Taylor all along, that I have no intentions of going forward on a petition to set aside the provisions of the marital dissolution agreement if I don't have a genuine legal basis –
> THE COURT: I will tell you what, we need to send forth an affidavit from your client saying that she is not going to challenge and that she wants the funds released.
> MR. MORTON: I don't mind recommending that to my client, Your Honor, but I would be foolish to recommend that if I had not completed an investigation as to whether or not Mr. Schutt did not disclose all of his assets at the time of –
> THE COURT: Let me tell you what, until I get an affidavit that says she is not going to challenge and she says – and I get an affidavit that says she does want these monies released because she intends herself to honor the integrity of the contract, I am not releasing the funds.

Thus, the trial court indicated to Wife that it would order a release of the funds Husband had deposited with the court clerk only if Wife executed an affidavit stating that she would not seek to disaffirm the MDA. Wife's counsel expressed reluctance to do so without investigating whether Husband had fraudulently induced Wife into signing the MDA. The hearing concluded without resolving the matter.

Subsequently, Wife filed a motion to reconsider, again urging the trial court to release the funds deposited with the court clerk. As a result, the trial court held a second hearing on the

---

[6]Apparently, Wife's former counsel sent Husband's attorney a preliminary draft of a motion to set aside the MDA; however, the motion to set aside was not filed at that time.

matter. Wife indicated she was not prepared at that point to choose between affirming or disaffirming the MDA, but sought more time to investigate and take discovery. The trial court then attempted to broker an agreement:

> THE COURT: Well, let me ask you this, suppose we release the funds for this month and then – but he has been paying regularly and she has been receiving regularly for some period of time. Not a terribly long period of time but for some period of time?
>
> MR. TAYLOR: Yes, ma'am.
>
> THE COURT: So why don't we just release in the abundance of caution since we don't want – then that way nobody is disadvantaged. I will hear you on the 30th. I give you a ruling on the 30th and nobody is disadvantaged.
>
> MR. TAYLOR: Judge, that would be appropriate for the $3,600 a month in alimony, but what Mr. Schutt is also paying is $20,000 at a time in payment of equity in the house and we –
>
> THE COURT: Well, could you reach a compromise and go ahead and pay the [alimony] so there is no question? And if it becomes appropriate, Mr. Morton, the Court could even give you interest on the $20,000 that she didn't get this month?
>
> MR. MORTON: I think that is fine, Your Honor. And, in fact, I would recommend to my client that she sign an affidavit saying that she is not going to move to set aside any provision of the marital dissolution agreement in the absence of fraud.

Thus, the resolution at the end of the hearing was that Wife would execute an affidavit forswearing any intent to challenge the validity of the MDA except on the basis of fraud; in exchange, the trial court would release the alimony funds on deposit with the court clerk. Pursuant to the understanding articulated at the hearing, Wife filed the following affidavit with the trial court on June 24, 2009:

> I, Jodie (Schutt) Miller, . . . under the penalty of perjury, do hereby swear and affirm the following to be true and correct to the best of my knowledge and belief, to wit:
>
> I will not pursue a Motion to Set Aside any of the provisions of the Marital Dissolution Agreement entered into on November 20, 2008 under Docket No. CT-005175-07 in the absence of fraud.

Wife also withdrew her pending motions to alter and amend the final decree of divorce. Shortly thereafter, the trial court entered an order granting Wife's request to release the

alimony funds on deposit with the court clerk. Husband was permitted to continue depositing the funds related to the marital home into the court clerk's office.

Two weeks later, on July 15, 2009, Wife filed a motion under Rule 60.02 of the Tennessee Rules of Civil Procedure to set aside certain provisions of the MDA, alleging fraud. The motion to set aside argued that Husband's alimony obligation under the MDA would have been affected by the stock options referenced in Husband's employment agreement with Aspyra, Inc., as well as his salary from Aspyra, Inc. The motion also asserted that, in discovery, Husband knowingly failed to disclose information about several marital assets. All of this, Wife contended, was designed to "induce [her] into execut[ing] [the] MDA which was to her detriment." The motion claimed that Husband's "misrepresentations concerning his employment raise[d] questions as to the veracity of all his asset disclosures prior to the execution of the MDA and warrant further inquiry into same; particularly in light of the significant gaps in [Husband's] responses to [Wife's] discovery requests. . . ."

Less than a month after Wife filed the motion to set aside the final decree and the MDA based on alleged fraud, Wife amended the motion to include alternative claims. The amended motion stated that "if [Husband's] failure to disclose vested employment income and vested stock options was not intentional and knowing, then [Husband's] failure was based upon mistake, inadvertence or excusable neglect." The amended motion also sought to have the MDA set aside under the Rule 60.02(5) catchall, for "any other reason justifying relief." The amended motion did not reference Wife's affidavit stating that she would not pursue a motion to set aside the MDA on any ground other than fraud.

In August 2009, Wife filed another motion. This motion sought to enforce the Mediation Agreement executed by the parties on October 8, 2008.[7] The August 2009 motion was based on the loss in value of the parties' IRAs that occurred between the time the parties signed the Mediation Agreement on October 8, 2008 and the time of distribution on December 15, 2008. Wife contended that, under the Mediation Agreement, she should have received the dollar value of the IRAs as of the date of the mediation.

Judge Robilio held a hearing or status conference with the parties' lawyers on August 25, 2009, to discuss several of the pending motions. Wife's counsel explained to the trial judge that he was seeking discovery on allegations that Husband committed fraud by failing to disclose information prior to the mediation that he had a duty to disclose. After hearing this, Judge Robilio told Wife's counsel:

---

[7]When Wife filed her notice of appeal in this case, the trial court had not yet ruled on this motion. The case was remanded for resolution of the motion. The record was then supplemented with the trial court's order denying Wife's motion.

THE COURT: I think if you are going to put [Husband] to expense, legal expense, time, etc[.], you may as well have a right to get the information you need. I am not sure but I will say one thing that I want to say right now that I want your client to understand that if her petition is seen as being lacking in merit, she is going to get to pay for Mr. Taylor's fees.

MR. MORTON: Your Honor, just so Your Honor knows this, I have explained that to her very, very specifically.

In the course of the hearing, counsel for Husband informed the trial court that Wife's former attorney, Hal Gerber, would be a witness as to one of Wife's pending motions; he explained that Wife had testified in her deposition that she signed the Mediation Agreement only because Gerber made her feel compelled to sign it. Judge Robilio stated that she would not hear a matter that required her to make a determination on Gerber's credibility. It was determined that a retired judge would be asked to hear matters in the case that involved assessing Gerber's credibility. A consent order was entered appointing retired Chancellor D.J. Alissandratos as a Special Judge "on the limited issue of credibility on any points of disputed fact between [Wife] and her prior attorney, Hal Gerber." The order indicated that Judge Robilio would hear all other matters.[8]

In September 2009, Husband filed a motion for sanctions pursuant to Rule 11 of the Tennessee Rules of Civil Procedure.[9] The motion alleged that Wife's efforts to have the MDA set aside were without factual basis and were done for an improper purpose. The motion was not immediately heard.

In February 2010, Judge Robilio held a hearing on Wife's request for release of the funds related to the marital home that Husband had paid to the court clerk's office. Judge Robilio declined to release those funds and set the case for trial on March 24, 2010.[10]

---

[8]The initial order designated Chancellor Alissandratos as a special master "to hear all issues presently pending in this cause." A subsequent order designated Chancellor Alissandratos as a Special Judge and limited his appointment to issues involving Gerber's credibility.

[9]The filing date of this motion is not legible from the record. However, it appears that it was served on Wife's attorney pursuant to the "safe harbor" provision in Rule 11.03(1)(a), on August 12, 2009. *See* Robert Banks, Jr. and June F. Entman, *Tennessee Civil Procedure* § 5-3(j) at p.5-33–5-35 (3rd ed. 2009). However, based solely on Mr. Morton's assertions to the trial court, it appears that this motion was likely filed on September 3, 2009.

[10]At the conclusion of this hearing, after Judge Robilio left the courtroom, apparently Wife's counsel exhibited considerable frustration. His actions were reported to Judge Robilio by her court staff, and Judge Robilio took the unusual step of having the court staff file affidavits on the conduct of Wife's counsel after

(continued...)

On March 10, 2010, Wife filed a motion asking Judge Robilio to recuse herself from the case. The motion cited Judge Robilio's demeanor at the February 2010 hearing and the substantive rulings made, including setting the case for trial on March 24, 2010. Wife contended that outstanding matters such as discovery could not be resolved before the scheduled trial date.

Before Wife's recusal motion was heard, Special Judge Alissandratos held an evidentiary hearing on March 17, 2010, at which Wife testified. At the conclusion of the hearing, Special Judge Alissandratos made credibility determinations that were not favorable to Wife, finding that Wife was told by Gerber in advance that the Mediation Agreement would be binding once she signed it, and that she signed the Mediation Agreement knowing that there was uncertainty about whether she had received all of the pertinent financial information from Husband.

Two days later, on March 19, 2010, Judge Robilio held a hearing on, among other things, Wife's motion asking her to recuse herself from the case. The hearing featured several heated and confusing exchanges between Wife's counsel and Judge Robilio. Wife's counsel voiced a number of concerns, including a complaint that Judge Robilio's "bifurcation" of the case, that is, assigning Special Judge Alissandratos to hear certain matters involving Gerber's credibility, ended up limiting the ability of Wife's counsel to question Gerber. In the course of the hearing, it became clear that Judge Robilio took umbrage at the recusal request and believed there was no basis for it. Wife was present at the hearing, and Judge Robilio insisted that Wife take the stand and testify that she did not believe that Judge Robilio could be impartial.[11] Wife was sworn and did exactly that. At the conclusion of the hearing, Judge Robilio granted the recusal motion. The matter was transferred *in toto* to Special Judge Alissandratos.

Having accepted the transfer of the entire case, Special Judge Alissandratos held a hearing on several of Wife's pending motions in April 2010. Wife's concern about the prior bifurcation of the proceedings was addressed at the outset of the hearing:

> THE COURT: Okay, so is it fair to say that we have dealt with your concerns about the motion to strike the [bifurcation] proceedings, and the way we will

---

[10](...continued)
Judge Robilio left the courtroom. The appellate record does not include these affidavits, but Judge Robilio referred to having done this in the course of a subsequent heated exchange with Wife's counsel.

[11]Judge Robilio said: "[N]ow you come before me and say I can't give her a fair hearing. I want her to tell me that herself, and we can swear her in."

deal with it is we will incorporate what happened in those proceedings, but you are not restrained from expanding to your heart's content, so to speak, within, obviously, the realm of relevance, the limitations of relevance, at a new hearing whatever it is that you felt like you couldn't get into at the last hearing? Is that a fair synopsis?

MR. MORTON: Yes, Your Honor.

Thus, Special Judge Alissandratos indicated that all of the prior proceedings would be considered together, and Wife's counsel would be permitted to address matters that had been precluded in the prior bifurcated proceedings. In the remainder of the hearing, the trial court discussed Wife's motion to enforce the Mediation Agreement and a motion to compel discovery. The pressing issues were temporarily resolved in anticipation of an evidentiary hearing.

In July 2010, Wife filed a second amendment to her motion to set aside the MDA. This amendment asserted that the MDA should be set aside because Husband dissipated and failed to preserve the parties' marital assets.

Later that month, Husband filed a motion to dismiss all three of Wife's pending motions to set aside the MDA. The trial court scheduled a hearing on September 1, 2010, to consider Husband's motion to dismiss along with other matters. In advance of the hearing, Husband filed a memorandum of law in support of his motion to dismiss, and Wife filed responses to Husband's motion and memorandum.

At the beginning of the September 1, 2010 hearing, Wife proffered yet another motion to amend her motion to set aside the MDA. This amendment was based on the report of a forensic accountant, which Wife claimed demonstrated that Husband had dissipated funds and failed to disclose assets. Wife's counsel acknowledged that he had been aware of the findings of the forensic accountant prior to his previous amendment of the motion to set aside. The trial court held that the motion to amend was untimely and declined to consider it at the hearing.

The trial court then heard the attorneys' arguments on Husband's motion to dismiss all three of Wife's motions to set aside. After hearing the parties' arguments, the trial court issued an oral ruling granting Husband's motion to dismiss. In its oral ruling, the trial court relied in part on the doctrines of res judicata and judicial estoppel, citing Wife's procedurally inconsistent positions. The trial court specifically cited the fact that Wife first filed a motion to set aside the MDA and then filed a motion to enforce it, and also cited Wife's affidavit, in which she disavowed any intent to challenge the MDA on grounds other than fraud.

Subsequently, the trial court entered a written order granting Husband's motion to dismiss Wife's three pending motions to set aside the MDA. The order stated that Wife's motions to set aside were dismissed for the reasons cited in the Memorandum of Law filed by Husband in advance of the hearing on his motion to dismiss and the arguments made in the hearing on Husband's motion.

The day after the hearing on Husband's motion to dismiss, Husband filed another motion for Rule 11 sanctions. As with Husband's previous motion for sanctions, this motion asserted that Wife's motions to set aside the MDA were without any evidentiary support, without basis in law, and done for the purpose of harassment and delay. In response, Wife contended that Husband's motion for Rule 11 sanctions did not specify the conduct that warranted sanctions. Wife also referred to Husband's employment contract and the report of the forensic accountant as a substantive basis for the motions.

On January 11, 2011, Wife filed another motion seeking the release of the funds related to the marital home that Husband had deposited with the court clerk in the summer of 2009. These funds totaled $45,000. Two days later, Wife filed her own motion for Rule 11 sanctions against Husband.

On January 18, 2011, the trial court held a lengthy evidentiary hearing on many of the pending motions, including both parties' motions for Rule 11 sanctions and Wife's motion for release of the funds on deposit with the court clerk. Husband testified at the hearing. His testimony described the parties' disclosures prior to the mediation, the mediation itself, when Husband received his job offer at Aspyra, Inc., the details of the offer, the termination of the job two months later, Husband's time and effort spent on the responses to Wife's motions to set aside the MDA and the related discovery, and the attorney's fees he incurred.

After hearing the parties' arguments and Husband's testimony, the trial court rendered an oral ruling granting Husband's Rule 11 motion. In its oral ruling, the trial court first addressed Wife's assertion in the July 15, 2009 motion to set aside that Husband failed to disclose certain assets. The trial court found that Wife "had access to every bit of information that she reasonably could have had about these assets prior to the entry of the final decree." The trial court next discussed Wife's allegations concerning Husband's short-lived employment with Aspyra, Inc. It found that Wife reasonably should have known that Husband was looking for jobs around the country. At the mediation, the trial court noted, Wife was insistent about securing a certain level of alimony even though Husband did not have a job at that time. It observed that Wife "was satisfied with the deal she made as best evidenced by the mediation agreement that she signed" and held that Husband had no duty to disclose to Wife any information about the employment he secured after the mediation. All told, the trial court found, Wife had "zero proof" to support all of the allegations she had made in the wake of

the final decree. Moreover, the trial court noted, Wife's post-divorce motions were "contradictory," simultaneously seeking to enforce the MDA and set it aside. The trial court concluded that this was the rare case in which sanctions should be awarded. It awarded Husband the attorney fees and costs he incurred in defending Wife's various motions, a total of $61,500. The trial court released the $45,000 on deposit with the court clerk, paid by Husband for Wife's interest in the marital home, and awarded it to Husband, to be put toward satisfying the sanctions levied against Wife.

On March 9, 2011, the trial court entered a written order granting Husband's motion for Rule 11 sanctions. The written order further explained the trial court's rationale for the award:

13. [Husband's] Motion for Rule 11 Sanctions against [Wife] shall be granted. The Court finds that claims, defenses and other legal contentions of [Wife] have not been warranted by existing law, and the allegations and other factual contentions made by [Wife] have had no evidentiary support even after investigation and discovery by [Wife]. The Court finds that by clear and convincing proof it has been shown that the [Wife] had access to every bit of information that she reasonably could have had about the marital assets prior to the entry of the final decree, and that she had access to accounts if she wanted to get further information. [Wife] testified in her deposition that she had zero proof to support the various allegations that she asserted in this cause. [Wife] has continued to accept payment from [Husband] of substantial sums of money in accordance with the [MDA] while continuing to file motions that are contradictory in an attempt to set the agreement aside, one example being the filing of a Motion to Enforce "Binding" Agreement while simultaneously seeking to set aside the Agreement.

14. The Court finds that [Husband] has met the burden of proof under Rule 11 and that [Wife] had no information, no knowledge, no evidence, none whatsoever to reasonably raise the allegations that she did. There was no evidentiary support for these whatsoever.

15. The Court finds that sanctions under Rule 11 should be ordered. The [Wife] shall pay to [Husband] the sum of $61,500 as reimbursement for [Husband's] attorney fees, court reporter fees, process service fees, travel expenses, and lost time from work.

The trial court also dismissed Wife's motion for Rule 11 sanctions in this order. Wife now appeals.[12]

## ISSUES ON APPEAL AND STANDARD OF REVIEW

Wife states the issues presented on appeal as follows:

> Whether the trial court erred in ordering the bifurcation of the issue of the credibility of [Wife] and her former attorney prior to [Wife's] presentation of her motion to set aside specific provisions of the parties' marital dissolution agreement?
>
> Whether the trial court abused its discretion by denying [Wife's] motion to amend her motion to set aside provisions of the parties' MDA based upon her receipt of her forensic accountant's report which revealed the substantial dissipation of marital assets prior to and after the entry of the final decree?
>
> Whether the trial court erred in holding that [Wife] was judicial [sic] estopped from attempting to set aside provisions of the parties' marital dissolution agreement on the grounds of fraud carried out by [Husband]?
>
> Whether the trial court erred in awarding [Husband] $61,500 in Rule 11 Sanctions when it was not conclusively shown that [Wife's] claims were unreasonable at the time she submitted her motion and amended motions to set aside provisions of the parties['] marital dissolution agreement?

Generally, we review a trial court's factual findings de novo on the record, presuming those findings to be correct, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *see Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Watson v. Watson*, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005) (citing *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. RR Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999)).

---

[12]Wife filed a premature notice of appeal on January 28, 2011, ten days after the trial court's oral ruling on Husband's motion for sanctions and Husband's motions to dismiss, among others. The trial court's final written order was issued on March 9, 2011. On April 7, 2011, Wife appears to have filed an amended notice of appeal also appealing the written order. On May 13, 2011, this Court granted a motion to consolidate all pending appeals filed by Wife.

We review a trial court's conclusions of law de novo, with no such presumption of correctness. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). More specific standards of review are set forth in our analysis of the particular issues raised on appeal.

## ANALYSIS

While Wife raises a number of issues on appeal, we note that the entire appeal centers on the trial court's denial of Wife's post-trial motions to set the final decree aside under Rule 60.02. As recently discussed by our Supreme Court, the denial of Rule 60.02 motions are reviewed on appeal under the following standard:

> We . . . review for abuse of discretion a trial court's ruling on a Rule 60.02 motion for relief from a final judgment, . . . *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003). Abuse of discretion is found " 'only when the trial court applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employed reasoning that causes an injustice to the complaining party.' " *State v. Jordan*, 325 S.W.3d 1, 39 (Tenn. 2010) (quoting *State v. Banks*, 271 S.W.3d 90, 116 (Tenn. 2008)). The abuse of discretion standard does not permit an appellate court to merely substitute its judgment for that of the trial court. *See Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001); *Henry*, 104 S.W.3d at 479. Instead, "[u]nder the abuse of discretion standard, a trial court's ruling 'will be upheld so long as reasonable minds can disagree as to [the] propriety of the decision made.' " *Eldridge*, 42 S.W.3d at 85 (quoting *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000)).

*Discover Bank v. Morgan*, 363 S.W.3d 479, 487 (Tenn. 2012). Thus, we review the particular issues raised by Wife on appeal against the overall backdrop of the abuse of discretion standard utilized in considering the trial court's denial of Wife's post-trial motions.

### Bifurcation

Wife argues that the trial court erred in bifurcating the subissues in the case that would have required the trial court to determine the credibility of Wife's prior attorney, Hal Gerber. Wife contends that both Judge Robilio and Special Judge Alissandratos failed to consider the factors regarding bifurcation set forth in *Lamar Advertising Co. v. By-Pass Partners*, 313

-13-

S.W.3d 779, 790 (Tenn. Ct. App. 2009) and that this case did not warrant bifurcation.[13] Wife argues that the issues in her post-trial motions centered on Husband's alleged fraudulent concealment of marital assets, his dissipation of marital assets, and mistake; therefore, whatever Wife's former attorney told her about the binding effect of the mediation agreement was not relevant to Wife's post-trial motions. Wife argues that there was not a strong showing of necessity to warrant bifurcation and that Judge Robilio's belief that she could not preside over matters that involved assessing the credibility of Attorney Gerber was not sufficient.

We fail to see how Wife's ability to present her post-trial motions was substantively affected by Judge Robilio's decision to ask a special judge to hear matters involving the credibility of Attorney Gerber. While the transcripts of the proceedings indicate that the decision to assign these matters to a special judge was somewhat unusual and was surrounded by much discussion and confusion, ultimately, Wife can cite no prejudice resulting from it. Wife argues that she was not permitted at the bifurcated hearing to question Attorney Gerber about the value of the parties' financial holdings, and thus, Wife was deprived of her right to "full and effective cross-examination pursuant to Rule 611(b) of the Tennessee Rules of Evidence." This is simply not the case. Eventually, of course, the entire case was transferred to Special Judge Alissandratos after Judge Robilio granted Wife's motion for recusal. After the case was transferred in its entirety, at the April 9, 2010 hearing, Special Judge Alissandratos stated specifically that the parties would be permitted to "expand[] to [their] heart's content" on any matters unaddressed at the bifurcated hearing. As Wife is unable to articulate how the trial court's decision to transfer particular issues to a special judge adversely impacted her ability to present and argue her post-trial motions, we find that this issue is without merit.

---

[13] In determining whether to bifurcate this matter, Wife contends that Judge Robilio should have considered the following factors:

> 1) The interests of justice will warrant bifurcation of the issues in only the most exceptional cases and upon a strong showing of necessity.
> 2) The trial court should consider the possibility of juror confusion, the risk of prejudice to either party and the needs of judicial efficiency; and
> 3) Above all, the issues at trial must not be bifurcated unless the issue to be tried is so distinct and separate from the others that a trial of it alone may be had without injustice.

*See Lamar Advertising Co., v. By-Pass Partners*, 313 S.W.3d 779, 790 (Tenn. Ct. App. 2009)(citing *Gasoline Prods. Co., Inc. v. Champlin Ref. Co.*, 283 U.S. 494, 500; 51 S. Ct. 513 (1931)). With regard to a trial, bifurcation is reviewed under an abuse of discretion standard. *Ennix v. Clay,* 703 S.W.2d 137, 138-39 (Tenn. 1986). Wife cites no case reciting the standard for reviewing a trial court's decision to bifurcate certain issues in the context of post-trial motions.

**Denial of Motion to Amend**

Wife also argues that the trial court abused its discretion in denying her request to amend her motion to set aside, based on her receipt of the report of her forensic accountant. Wife notes that, under Rule 15.01 of the Tennessee Rules of Civil Procedure, leave of the court to amend pleadings "shall be freely given when justice so requires." She stresses that the most important factor to be considered is the "proposed amendment's potential prejudicial effect on the opposing party." *See Newcomb v. Kohler*, 222 S.W.3d 368, 384 (Tenn. Ct. App. 2006). Wife argues that the forensic accountant's report was "extremely relevant" and "conclusively implicated" Husband in the fraudulent nondisclosure of the parties' accounts. She contends that the trial court's refusal to permit the requested amendment "deprived [Wife] of the ability to resolve her claims on the merits rather than having them dismissed on a legal technicality" and warranted the trial court allowing Wife to amend.

Wife acknowledges that she filed her motion to amend on the day of the hearing to consider Husband's motion to dismiss the three motions to set aside that were already pending. She contends that the delay in filing the motion to amend can be explained because Husband's deposition, although scheduled before the September 1, 2010 hearing date, did not take place as scheduled.[14] Wife says she believed that Husband would produce the requested documents at the scheduled deposition, prior to the hearing date. When this did not happen, Wife contends, she moved to amend to incorporate the forensic accountant's report to prove Husband's "substantial unaccountability and dissipation of marital assets during the divorce litigation."

As acknowledged by Wife, a trial court's denial of a motion to amend pleadings pursuant to Rule 15.01 of the Tennessee Rules of Civil Procedure is reviewed under an abuse of discretion standard. *Harris v. St. Mary's Medical Ctr.*, 726 S.W.2d 902, 904 (Tenn. 1987). Thus, the trial court's decision to deny a motion to amend "will be upheld so long as reasonable minds can disagree as to the propriety of the decision made." *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000).

We are not persuaded. As alluded to by the trial court, under Rule 6.04 of the Tennessee Rules of Civil Procedure and Rule 5(c) of the Shelby County Local Rules, a written motion is to be filed five days in advance of the hearing. Tenn. R. Civ. P. 6.04; Tenn. Shelby Co. Cir. Ct. Rule 5(c). Moreover, Wife and her attorney received the accountant's report on July 12, 2010, well in advance of the September 1, 2010 hearing. Regardless of any mishaps with Husband's deposition, Wife has not articulated any justification for waiting until *the day of the hearing* to present the motion to amend. We find no abuse of discretion in the trial court's

---

[14]The record indicates that Husband was sanctioned for failing to appear for the scheduled deposition.

denial of Wife's motion to amend. *See Largin v. Williamson Co. Animal Control Shelter/Center*, No. M2005-01255-COA-R3-CV, 2006 WL 2619973, at *4-5; 2006 Tenn. App. LEXIS 605, at *12-13 (Tenn. Ct. App. Sept. 12, 2006) (finding no abuse of discretion in the trial court's denial of a motion to amend filed the day before a hearing based on the motion's untimeliness and the movant having received prior notice of the alleged deficiencies in the complaint).

**Dismissal of Motions to Set Aside**

In dismissing her motions to set aside all or part of the MDA, Wife contends that the trial court misapplied the doctrine of judicial estoppel. She argues that "in order for the judicial estoppel to apply, the party against whom the estoppel is urged must have made a statement of *fact* under oath that he or she later seeks to contradict." *Cracker Barrel Old Country Store v. Epperson*, 284 S.W.3d 303, 314 (Tenn. 2009) (emphasis added by Wife). Wife argues that there was no "willful inconsistent statement of fact pointed to by the trial court to invoke judicial estoppel" and there was not even an inconsistent sworn statement of fact before it or a change in position. Wife contends that the motions to set aside were "not in the least contradictory" to her sworn affidavit, but regardless, the sworn affidavit did not contain an inconsistent statement of fact. Wife notes as well that the first motion to set aside alleged fraud, and seems to argue that the remaining motions, if interpreted generously, could be seen as asserting fraud as well.

Wife is correct in noting the Supreme Court's clarification of the doctrine of judicial estoppel in *Cracker Barrel,* which appeared to limit the application of the doctrine to situations in which a party had made contradictory sworn statements of fact. *Cracker Barrel,* 284 S.W.3d at 314-15. This Court has held that judicial estoppel does not apply to "anything short of a willfully false statement of fact." *Robertson v. Hodges*, No. E2009-01335-COA-R3-CV, 2010 WL 2593965, at *5; 2010 Tenn. App. LEXIS 411, at *14 (Tenn. Ct. App. June 28, 2010) (citing *Frazier v. Pomeroy*, No. M2005-00911-COA-R3-CV, 2006 WL 3542534, at *10-11; 2006 Tenn. App. LEXIS 775, at *28-30 (Tenn. Ct. App. Dec. 7, 2006)). *See also Reynolds v. Tognetti*, No. W2010-00320-COA-R3-CV, 2011 WL 761525, at *5; 2011 Tenn. App. LEXIS 107 , at *14 (Tenn. Ct. App. Mar. 4, 2011) (quoting *Marcus v. Marcus*, 993 S.W.2d 596, 602 (Tenn. 1999)). The doctrine of judicial estoppel seeks to ensure that parties do not "play[] fast and loose with the courts" by contradicting a previous sworn statement or testimony. *Woods v. Woods*, 638 S.W.2d 403, 406 (Tenn. Ct. App. 1982).

Here, the trial court pointed to the contradictory positions taken by Wife in two ways. First, the trial court pointed to the contradictory positions Wife took in the array of motions that she filed. Initially, Wife filed a motion asserting that the MDA, or portions of it, should be voided or set aside because Husband failed to disclose facts about his employment with

Aspyra, Inc. before the final decree was entered. This was followed by a motion to enforce the terms of the MDA. After that, Wife filed numerous motions and amended motions, some seeking to set aside the MDA for various reasons and others seeking to reach the monies Husband was depositing with the court clerk pursuant to the MDA's terms. The trial court correctly described these as inconsistent. Second, the trial court relied on the sworn affidavit filed by Wife, in which she swore not to pursue a challenge of the MDA on any basis other than fraud, noting that the bulk of allegations in Wife's motions had nothing to do with fraud.

We agree with Wife that the doctrine of judicial estoppel may not, strictly speaking, be applicable. The trial court saw Wife's inconsistent motions as simultaneously asserting that the MDA was void and that it was valid. These appear to be inconsistent legal positions, not inconsistent sworn statements of fact. Wife's sworn affidavit did not include factual allegations, as admitted by Husband's counsel in the hearing on his motion to dismiss, and so would not support a holding of judicial estoppel.

However, our analysis does not end there. While the trial court's oral remarks at the conclusion of the hearing on Husband's motion to dismiss specified reliance on the doctrine of judicial estoppel, the trial court's subsequent written order did not rely exclusively on judicial estoppel. As noted above, the written order stated that the court granted Husband's motion to dismiss based on the arguments cited in Husband's memorandum of law filed in advance of the hearing and the arguments made at the hearing as well. Moreover, as we stated above, we are not reviewing a trial court's dismissal of allegations in a complaint. We are reviewing the trial court's ruling on post-trial motions, and so we broadly review the trial court's decision only to determine whether there was an abuse of discretion. *See Discover Bank,* 363 S.W.3d at 487.

In Husband's memorandum of law filed in advance of the hearing, he argues that Wife is "bound by" the sworn affidavit she filed in June 2009, in which she stated: "I will not pursue a Motion to Set Aside any of the provisions of the Marital Dissolution Agreement . . . in the absence of fraud." He contended at the hearing that Wife filed the sworn affidavit to obtain "pecuniary return," namely, the trial court's release of the alimony and other payments Husband was depositing in the court clerk's office.

We agree. In her sworn affidavit, Wife expressly waived her right to challenge the parties' MDA on any basis other than fraud. She is bound by that express waiver and estopped from

acting contrary to it.[15] "An express waiver is an oral or written statement giving up known rights or privileges." ***Shedd v. Cmty. Health Sys.,*** No. W2010-02140-COA-R3-CV, 2010 WL 4629020, at *2; 2010 Tenn. App. LEXIS 706, at *6 (Tenn. Ct. App. Nov. 12, 2010), *perm. app. den.* (Apr. 13, 2011) (citing ***Grimsley v. Kittrell***, No. M2005-02452-COA-R3-CV, 2006 WL 2846298, at *3; 2006 Tenn. App. LEXIS 633, at *10 (Tenn. Ct. App. Sept. 29, 2006)). "To constitute the waiver of a legal right there must be a clear, unequivocal, and decisive act of the party showing such a purpose, or acts amounting to an estoppel on [its] part" and "there must be clear, unequivocal, and decisive acts of the party, an act which shows a determination not to have the benefit intended." ***Shedd***, 2010 WL 4629020, at *2; 2010 Tenn. App. LEXIS 706, at *7 (quoting ***Kentucky Nat'l Ins. Co. v. Gardner***, 6 S.W.3d 493, 498-99 (Tenn. Ct. App. 1999)). "Waiver operates to preclude a subsequent assertion of the right waived or any claim based thereon"; a waiver is irrevocable once made and relied upon by the opposing party. ***See*** 28 Am. Jur. 2d. *Estoppel and Waiver* §§ 186, 187 (2011).

Thus, in her sworn affidavit, Wife waived her right to challenge the MDA on any basis except fraud, and she is bound by it. Although Wife argues that all of her motions to set aside can be seen as alleging fraud, the trial court did not see them as such and neither do we. The only post-trial motion filed by Wife that asserts fraud is the first post-trial motion, filed on July 15, 2009, in which she alleged that Husband committed fraud by failing to disclose his employment information prior to entry of the final decree. We analyze this post-trial motion separately. As to the rest of Wife's post-trial motions to set aside, we affirm the trial court's dismissal on the basis of Wife's sworn affidavit.

We address separately Wife's July 15, 2009 motion, in which she asserts that Husband had a duty to disclose to her the salary and stock options referenced in his new employment contract with Aspyra, Inc. Wife asserts in the same motion that Husband failed to disclose other marital assets in discovery. On this basis, Wife alleged that Husband fraudulently induced her to execute the MDA.

Wife's allegations of fraud as to Husband's employment with Aspyra, Inc., frankly, are baffling. As noted by the trial court, Wife never produced any evidence that Husband had the job offer at the time of the parties' mediation. Rather, in the October 2008 mediation and the resulting Mediation Agreement, Husband agreed to the stated financial obligations to Wife without knowing whether he would even have a job, much less the terms of any job. Moreover, as noted by the trial court, Wife insisted upon an agreement at mediation and in the later MDAs that specified a dollar amount of alimony, so that it would *not* be affected by

---

[15]The Hobson's choice the trial court offered to Wife – either execute an affidavit disavowing any intent to challenge the MDA or forego attempts to obtain the release of the funds on deposit with the court clerk – has not been raised as an issue on appeal.

whatever Husband's income level turned out to be. The trial court noted that, in the mediation, Wife "told [Husband] that it doesn't matter if you get a job paying less than what you are estimating, my alimony is $3,600 a month and it is not changing . . . ." The trial court also found that, Husband "broached the subject of perhaps alimony should change based on the job he got, this is undisputed . . . . it's [Wife] who slammed the door on that possibility." The trial court correctly observed that Wife "tries to have her cake and eat it, too." The trial court found that, under those circumstances, Husband had no duty to inform Wife about the terms of his new employment. We agree.

Wife's allegations regarding the stock options referenced in Husband's Aspyra, Inc. employment contract are especially perplexing. It is undisputed that Husband never actually received the stock options, and so received zero value from the stock option provision in the employment agreement. It is unclear what Wife thinks she would have received under any set of circumstances. Recalling grade school mathematics, ½ of zero = zero.

This brings us to the next point. The reason Husband never received any stock options was the fact that his new job at Aspyra, Inc. disappeared after only *two months*. The trial court did not buy Wife's explanation of why she continued to pursue a motion to set aside the MDA based on Husband's employment long after the job went away, and neither do we. As discussed below, this fact becomes important in our analysis of the award of sanctions against Wife.

In her July 15, 2009 motion, Wife also alleged that Husband failed to disclose marital investment accounts and assets by failing to respond to discovery requests submitted during the divorce proceedings. This motion includes a vague allegation that Husband engaged in a "knowing concealment of material facts . . . in order to induce [Wife] to execute [the] MDA which was to her detriment." Wife's motion lists a number of documents related to the parties' investment accounts, but includes no facts indicating that there was any concealment related to the accounts. Instead, using the nondisclosure of Husband's employment information as the ostensible reason, Wife sought to re-open discovery to *find out* if any assets were not disclosed. As we now know, after much discovery permitted by the trial court, none were found.

In view of the record as a whole, and giving appropriate deference to the trial court's broad discretion in considering Rule 60 motions, we find no abuse of the trial court's discretion. Thus, we affirm the dismissal of all of Wife's post-trial motions.

## Rule 11 Sanctions

Finally, Wife argues that the trial court erred in awarding Husband $61,500 in fees and costs as sanctions under Rule 11 of the Tennessee Rules of Civil Procedure. Procedurally, Wife argues that Husband's Rule 11 motion did not "state what specific conduct [Wife] had engaged [in] to support his position for sanctions," as required under Rule 11.03(1)(a). Substantively, Wife maintains that the claims in her post-trial motions were reasonable at the time the motions were filed, and that she had "knowledge, information and belief, after reasonable inquiry [] that [Husband] had fraudulently failed to disclose assets and had intentionally/recklessly dissipated assets prior to, and after, the entry of the Final Decree.

Rule 11.02 of the Tennessee Rules of Civil Procedure provides:

By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney. . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, —

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

* * *

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. . . .

Tenn. R. Civ. P. 11.02 (2012). Rule 11.03 authorizes the trial court to impose sanctions on the attorneys or the parties, "[i]f, after notice and a reasonable opportunity to respond, the court determines that subdivision 11.02 has been violated. . . ." Tenn. R. Civ. P. 11.03. The notice provision states that the Rule 11 motion must "describe the specific conduct alleged to violate subdivision 11.02." Tenn. R. Civ. P. 11.03(1)(a). The motion is served on the offending party, "but shall not be filed with or presented to the court unless, within 21 days after service of the motion . . . the challenged paper . . . is not withdrawn or appropriately corrected." Tenn. R. Civ. P. 11.03(1)(a).

To determine whether an attorney's conduct is sanctionable under Rule 11, the trial court looks at whether the conduct was reasonable at the time the document was signed. ***Marra v. Bank of New York,*** 310 S.W.3d 329, 340 (Tenn. Ct. App. 2009)(citing ***Krug v. Krug,*** 838

-20-

S.W.2d 197, 205 (Tenn. Ct. App. 1992). The trial court also looks at whether the act of later advocating the pleading or written motion was reasonable at the time. *See Evans v. Evans,* No. M2010-00079-COA-R3-CV, 2010 WL 3715977, at *3; 2010 Tenn. App. LEXIS 588, at *9-10 (Tenn. Ct. App. Sept. 22, 2010)(citing Tenn. R. Civ. P. 11.02). However, "[t]he mere fact that a claim ultimately fails does not make it per se frivolous." *Spivey v. King,* E2011-01114-COA-R3-CV, 2012 WL 344968, at *17; 2012 Tenn. App. LEXIS 67, at *47 (Tenn. Ct. App. Feb. 2, 2012)(citing *Marra,* 310 S.W.3d at 343). "[T]he question of whether a Rule 11 violation has occurred requires the trial court to make highly fact-intensive determinations regarding the reasonableness of the attorney's (and client's) conduct." *Marra,* 310 S.W.3d at 340 (quoting *Boyd v. Prime Focus, Inc.,* 83 S.W.3d 761, 765 (Tenn. Ct. App. 2001)). As such, we review the trial court's ruling on a Rule 11 motion for an abuse of discretion. *Marra,* 310 S.W.3d at 340 (citing *Krug,* 838 S.W.2d at 205).

Before addressing the substantive aspects of Wife's argument, we address her procedural argument. Wife contends that Husband failed to "state what specific conduct [Wife] had engaged [in] to support his position for sanctions." We disagree. The motion asserted specifically that Wife had no evidentiary support for the factual allegations in her motion to set aside provisions of the MDA. We note also that the certificate of service for Husband's Rule 11 motion carries the same date of Wife's deposition, in which she admitted that she could not identify any assets that were not disclosed to her in advance of the parties' mediation. The motion also asserted that Wife's motion to set aside provisions of the MDA was filed in order to harass Husband and to cause needless increase in the cost of the parties' divorce litigation. Overall, we affirm the trial court's implicit finding that Husband's Rule 11 motion meets the standard in the rule and adequately notified Wife of the conduct alleged to violate Rule 11.02.

On a substantive level, Wife argues that she had a reasonable basis for the claims in her motions to set aside the MDA at the time the motions were filed. Wife points to the fact that Husband's employment compensation and his benefits, such as the stock options, were not disclosed to her before the entry of the final decree. She complains that her motions to set aside were dismissed before she could take Husband's deposition. Wife points to the fact that she notified Husband that some funds in a couple of the parties' accounts had not been distributed by the company that was holding the funds, and she implies that Husband's claimed lack of knowledge of this fact was not credible. Wife insists that, had she been permitted to amend her motion yet again, the forensic accountant's report attached to the proposed amendment would have demonstrated that Husband failed to disclose some assets and substantially dissipated other assets.

In the written order on Husband's Rule 11 motion, the trial court found that the factual allegations in Wife's motion to set aside "had no evidentiary support even after investigation and discovery. . . ."  It found that Wife "had access to every bit of information that she reasonably could have had about the marital assets prior to the entry of the final decree, and that she had access to accounts if she wanted to get further information."  It noted that Wife admitted in her deposition "that she had zero proof to support the various allegations that she has asserted," all the while continuing to accept payments from Husband pursuant to the MDA she was attacking.

The trial court's oral ruling at the hearing on Husband's Rule 11 motion provides more detail about its findings and addresses many of the arguments Wife makes in her appeal:

> The fact that both of them, both the former husband and former wife were completely unaware of what happened to these two accounts [that were not distributed by the company holding them] does not give her license to have brought the action that she brought against her former husband.
>
> The fact that he goes on with his life and gets a job which she fully expected because the evidence is that he has thrown out a wide net. He was searching for a job all over the country. He was interviewing everywhere.
>
> In fact, at the time of the mediation he said that he wasn't sure if he was or not going to take a job in Indiana because it was a lesser job offer than he thought he could achieve and/or could properly meet the financial obligations that the former wife insisted that she wasn't going to compromise on their agreement at all about the $3,600 per month that was going to convert to $4,000 a month for alimony.
>
> It is reasonable that she should expect that he would continue to look for higher paying jobs. She was satisfied with the deal she made as best evidenced by the mediation agreement that she signed. He had no legal duty to tell her that during the interim after that that he found a job, whether it was a higher pay or lower pay or whatever. There was no legal duty.
>
> And when she gets asked in her deposition about any proof that she has for all of the various allegations that she asserted, she said she does not have any. It's zero proof.

Thus, the trial court concluded both Husband and Wife were unaware of any funds left in the accounts Wife mentions; that Husband did not have a job offer at the time of the parties' mediation, and Wife knew this but nevertheless insisted that the MDA include a firm dollar amount of alimony; that Husband was not obliged to tell Wife about his new job prior to the entry of the final decree; and that even after the numerous post-trial motions and discovery disputes, Wife never adduced any evidence to support her allegations of fraud and wrongdoing. In its oral ruling, the trial judge remarked on how rarely he had awarded Rule 11 sanctions but found that Wife's actions in this case justified such a sanction.

As noted above, the fact that Wife's post-trial motions ultimately failed does not in and of itself mean that they constituted a violation of Rule 11. We look at whether Wife had a reasonable basis for the July 15, 2009 post-trial motion to set aside when it was filed. We also look at Wife's continued advocacy for that motion, as well as Wife's subsequent amended motions to set aside. We find that the evidence fully supports the trial court's findings.

Wife's original motion to set aside the MDA was filed on July 15, 2009, so we look at what had occurred up to that point. At that time, Wife knew that, in the parties' mediation, she had insisted on a firm dollar amount of alimony from Husband irrespective of whatever job he secured. In light of this, Wife's alarm at Husband's failure to inform her of his new job is inexplicable, but regardless, by March 2009, the job and all its benefits had disappeared out from under Husband's feet. Wife suspected that Husband had hidden assets from her, but she had no facts to support that suspicion. Wife's trial attorney, Gerber, withdrew from representing her in the wake of her efforts to void the parties' MDA. Wife's threats to have the parties' MDA voided prompted Husband to begin depositing his payments under the MDA with the court clerk's office. When Wife tried to obtain these funds, Judge Robilio secured from Wife an affidavit in which she swore that she would not challenge the parties' MDA on any basis other than fraud. All of this had occurred before Wife filed the first motion to set aside that is at issue in this appeal.

On August 7, 2009, less than a month after Wife's July 15, 2009 motion was filed, Wife filed yet another motion to set aside, this one clearly not based on fraud and contrary to her sworn affidavit. A few days later, on August 12, 2009, Wife was deposed. She admitted in the deposition that she knew of no accounts that were not disclosed to her prior to the parties' ill-fated mediation:

QUESTION: Mr. Morton raises some good questions, Ms. Miller. You can't name a single asset that Mr. Schutt had at the time of the divorce that he did not disclose to you, can you?

ANSWER: No.

QUESTION: So you are not alleging that he did not disclose anything, are you?

MR. TAYLOR: Mr. Morton objected to the form. Mr. Taylor said, that is fine. Mr. Morton, the documents speak for themselves.

QUESTION: If you don't know of any asset that he had that he did not disclose, you can't allege that he failed to disclose something, can you?

ANSWER: I suppose not.

QUESTION: You can't name me one single asset as we are sitting here, one bank account, one anything that you are saying, look right here, he did not disclose that asset, you can't do that can you?

ANSWER: No, sir.

At this point, Wife received notice that Husband intended to seek Rule 11 sanctions against her. Judge Robilio warned Wife that if her motions were deemed to be without merit, "she is going to get to pay for [Husband's attorney's] fees." Instead of reconsidering her advocacy for motions that had no evidentiary basis, Wife doubled down. This resulted in the spin-off disputes over discovery, recusal, and the funds deposited with the clerk's office. Undaunted by the fact that her efforts – still – had yielded no evidence to support her allegations, Wife filed *another* motion to set aside, also not based on fraud and contrary to her sworn affidavit. Later, she even attempted to file *yet another* motion to set aside, her litigiousness finally curtailed by the trial court's decision to put an end to it.

Based on this, we find that the trial court did not abuse its discretion in holding that Wife's motions and entire course of action constituted a violation of Rule 11.

Wife argues as well that the award of $61,500 in sanctions against her is not warranted. We admit this is a hefty sanction indeed. Husband's counsel sought fees in excess of $45,000, with the rest comprised of expenses, including Husband's travel from California and his lost work time. The trial court found that the request was warranted under the circumstances:

-24-

The Court finds that indeed this is a case in which the damages are substantial sadly but foreseeably because of 83 post divorce pleadings filed by the former wife. It is reasonable to think that that costs a lot of money to defend and deal with.

Based on our careful review of the record as a whole, we find that the amount of the sanctions, while large, is within the realm of reasonableness, and is not an abuse of the trial court's discretion. Therefore, we affirm the trial court's award of Rule 11 sanctions.

## Attorney Fees on Appeal

Husband requests an award of attorney fees for defending this appeal. "The decision of whether to award attorney's fees on appeal rests solely within the discretion of this Court." *Parchman v. Parchman*, No. W2003-01204-COA-R3-CV, 2004 WL 2609198, at *6; 2004 Tenn. App. LEXIS 768, at *15-16 (Tenn. Ct. App. Nov. 17, 2004) (citing Tenn. Code Ann. § 36-5-103(c) (2010); *Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995)). In considering whether to award attorney fees on appeal, the Court is mindful of "the ability of the requesting party to pay the accrued fees, the requesting party's success in the appeal, whether the requesting party sought the appeal in good faith, and any other equitable factor that need be considered." *Leslyn v. Ballew*, No. W2005-00337-COA-R3-CV, 2006 WL 709198, at *5; 2006 Tenn. App. LEXIS 191, at *15-16 (Tenn. Ct. App. Mar. 22, 2006) (quoting *Dulin v. Dulin*, No. W2001-02969-COA-R3-CV, 2003 WL 22071454 at *10; 2003 Tenn. App. LEXIS 628, at *26-27 (Tenn. Ct. App. Sept. 3, 2003)). While we have affirmed the trial court's award of $61,500 in Rule 11 sanctions, we also recognized that the award was quite large. Given the means of the parties and the circumstances as a whole, we respectfully decline Husband's request for an award of attorney fees on appeal.

## CONCLUSION

In conclusion, we find no abuse of the trial court's discretion in bifurcating the proceedings, in denying Wife's motion to amend, in dismissing Wife's motions to set aside, and in awarding Rule 11 sanctions against Wife. We decline to award Husband attorney fees on appeal.

The decision of the trial court is affirmed. Costs on appeal are assessed against Appellant Jodie Ann Miller (Schutt) and her surety, for which execution may issue if necessary.

_____

HOLLY M. KIRBY, JUDGE